UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARI P., | Case No.:  19-cv-00956-JLB |
| Plaintiff, | **ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| ANDREW M. SAUL, Acting Commissioner of Social Security, | |
| Defendant. | **[ECF Nos. 13, 14]** |

On May 22, 2019, plaintiff Kari P. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits.  (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment.  (ECF Nos. 13, 14.)  For the reasons set forth herein, Plaintiff's motion for summary judgment is **GRANTED**, the Commissioner's cross-motion for summary judgment is **DENIED**, and this matter is remanded for further administrative proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On April 28, 2016, Plaintiff filed an application for a period of disability and disability benefits under Title II of the Social Security Act, alleging disability beginning April 15, 2016. (Certified Administrative Record ("AR") at 176–81.) After her application was denied initially and upon reconsideration (AR 100–04, 106–11), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 112–13). An administrative hearing was held on May 4, 2018. (AR 35–67.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE"). (AR at 35–67.)

As reflected in his September 6, 2018 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 15, 2016 through the date of decision. (AR 17–34.) The ALJ's decision became the final decision of the Commissioner on April 22, 2019, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) This timely civil action followed. (ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2016, the alleged onset date. (AR 22.)

At step two, the ALJ found that Plaintiff had the following severe impairment: aortic dissection. (AR 22–24.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 24.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work" with the following limitations:

///

///

[S]he is limited to occasional climbing of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling.

(AR 24–27.)

For purposes of his step four determination, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (AR 27.)

The ALJ then proceeded to step five of the sequential evaluation process.  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, information clerk, sub-assembler, hand packager), the ALJ found that Plaintiff was not disabled under the law from April 15, 2016 through the date of decision.  (AR 28–29.)

## III.   PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's motion for summary judgment, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1.   Is it legally permissible for the ALJ to give great weight to Cardiologist Folkerth, MD who limits Plaintiff to sedentary work and then find Plaintiff able to perform light work?

2.   Can the ALJ fail to address Plaintiff's anxiety attacks including emergency hospitalizations and not provide a mental RFC?

3.   Did the Commissioner meet his burden of proof at step five where he provided three jobs which exceed Plaintiff's [limitations according to her] treating cardiologist [to] who[m] the ALJ gave great weight?

4.   Is the Commissioner required to provide a new hearing where the case is within the time frame pursuant to *Lucia v. SEC*, 138 S. Ct. 2044 (2018)?

(ECF No. 13-1 at 5.)

///

///

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

## V.   DISCUSSION

### A.   Opinion of Theodore Folkerth, MD

#### 1.   <u>Background</u>

On June 26, 2013, Plaintiff was brought to the hospital at Tri-City Medical Center and was diagnosed with a Type A aortic dissection with extension through the arch and the descending thoracic and abdominal aorta. (AR 350–51.) She was taken urgently to the operating room for repair and had successful repair of the aortic arch. (AR 348.) Her surgeon was Theodore Folkerth, MD. (AR 348, 352.)

A month later, on July 25, 2013, Dr. Folkerth stated as follows:

[Plaintiff] is now status post operative repair of a left Type A aortic dissection, also with repair of the left external iliac artery done on June 26th. She is currently doing quite well, increasing her exercise on a daily basis, and has established a relationship with the primary care physician that her husband uses from Kaiser.

**Current Medications:** Metoprolol 50 mg. twice daily; Potassium Chloride 20 mEq. b.i.d.; Lisinopril 10 mg. daily; and Lasix 40 mg. daily.

**Physical Exam:** She looks well today, and her incision is healed nicely. She had one small area of eschar at the site where the chest tubes were, which I debridement in the office. Her chest is clear and the incision otherwise is healed quite nicely. Her blood pressure is 117/74 mmHg in the left arm, and her heart rate is 96 and regular. $0_2$ saturation on room air is 99%.

**Impression:** In general, I think she has made excellent progress.

(AR 347.)

On February 25, 2015, Dr. Folkerth noted that Plaintiff "has been back at work" and "has been good about taking her medication." (AR 356.) He also noted that she had "significant anxiety about what she has been told about the remaining part of her aorta." (AR 356.) On August 16, 2016, Dr. Folkerth wrote a letter to the Social Security Administration ("SSA"), which stated:

> I am well-aware of [Plaintiff]'s aortic dissection since I performed the surgery on June 26, 2013. At that time she had replacement of the ascending aorta with a 26 mm. Hemashield graft under circulatory arrest, and then also had to undergo an exploratory laparotomy with repair of a left external iliac artery perforation. The patient has had a history of hypertension and I have not been involved with her care for the last 2 ½ years.
>
> It would be ill-advised for [Plaintiff] to be involved with any work that involved isometric activities which is common to be physically involved with construction unless she was able to have an administrative or clerical-type situation. The medical conditions that led to this aortic dissection includes hypertension, and the fact that the aorta did dissect indicates that this is a chronic illness and she should not be involved with any work or non-work situations that could lead to further dissection, including any isometric-type exercises.
>
> If further information is needed, I would be happy to supply it as this is a chronic situation and these recommendations are for life.

(AR 446.)

## 2.  Legal Standard

There are three types of medical opinions (treating, examining, and nonexamining) and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*,

574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"). Greater weight is afforded "to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. "[A]n [ALJ] may disregard [a] medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). Treating physicians' subjective judgments are important, and "properly play a part in their medical evaluations." *Embrey*, 849 F.2d at 422. "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted).

The ALJ accords "controlling weight" to a treating doctor's opinion where medically acceptable clinical and laboratory diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)–(6)). Greater weight is given to the "opinion of a specialist about medical issues related to his or her area of specialty." *Id.* (citing 20 C.F.R. § 404.1527(c)(5)).

"The 'RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting Social Security Regulation ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996)).[1] "It 'is the most [a claimant] can still do despite [his or her] limitations.'" *Id.* (quoting 20 C.F.R. § 416.945(a)(1)); *see also* 20 C.F.R. § 404.1545(a)(1).

"The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record." *Id.* (quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1545(a)(3). The ALJ must consider both the medical evidence and "descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by" the claimant, family, friends, and other people. *Id.* (quoting 20 C.F.R. § 416.945(a)(3)); *see also* 20 C.F.R.

---

[1]     SSRs "do not carry the force of law, but they are binding on ALJs nonetheless," and "[t]hey reflect the official interpretation of the SSA and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (citations omitted), *superseded by regulation on other grounds*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).

19-cv-00956-JLB

§ 404.1545(a)(3).  The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate."  SSR 96–8p, 1996 WL 374184, at *7.

### 3.   Analysis

Plaintiff argues that the ALJ erred in giving great weight to Dr. Folkerth's opinion and still finding Plaintiff capable of performing light work.  (ECF No. 13-1 at 5–16.) Dr. Folkerth opined that Plaintiff should not be involved with any work involving isometric activities, which are commonly involved with construction, unless she could have an administrative or clerical-type situation.  (ECF No. 13-1 at 11–12; *see also* AR 446.)  The ALJ gave great weight to Dr. Folkerth's opinion, stating as follows:

> Dr. Folkerth opined that the claimant is precluded from any work involving isometric activities, commonly involved with construction ([AR 446]). Dr. Folkerth's opinion regarding the claimant's functional limitations is highly credible because it is well-supported by the objective medical evidence, including records of the claimant's surgical treatment and diagnostic evidence.  It is also consistent with the record a whole, including the claimant's activities of daily living.  Thus, the undersigned assigns great weight to Dr. Folkerth's opinion.

(AR 26.)

After taking into consideration the record as a whole, including Dr. Folkerth's opinion, the ALJ determined that Plaintiff was able to perform "light work,"[2] with no other exertional limitations.[3]   The question is therefore whether these limitations incorporate

---

[2]      "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

[3]      "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven

Dr. Folkerth's prohibition on isometric activities.[4]  Plaintiff urges the Court to construe Dr. Folkerth's opinion as requiring sedentary work; while the Commissioner argues that the ALJ's RFC assessment contained all the limitations the ALJ found supported by substantial evidence.  (*See* ECF Nos. 13-1 at 11–13; 14-1 at 15.)  As set forth below, the Court finds that the ALJ erred by not adequately resolving this question.

Neither Dr. Folkerth nor the ALJ defined isometric activities.  Plaintiff defines isometric activity circularly as "resisting or pushing; isometric muscle action."  (ECF No 13-1 at 15 n.3.)  Defendant defines it as "'contractions of a particular muscle or group of muscles' where 'the muscle [does not] noticeably change length and the affected joint [does not] move.'"  (ECF No. 14-1 at 14 (citing MayoClinic.org, Laskowski, Edward, M.D., *Are isometric exercises a good way to build strength?* (Jan. 17, 2018), *available at* https://www.mayoclinic.org/healthy-lifestyle/fitness/expert-answers/isometric-exercises/faq-20058186).)  Similarly, *Stedman's Medical Dictionary* defines isometric exercises as exercises "consisting of muscular contractions without movement of the involved parts of the body."  *Isometric Exercise, Stedman's Medical Dictionary* 309480 (revised 2014).  Isometric exercise is often contrasted with isotonic exercise where muscular contractions shorten or lengthen the muscles, resulting in movement of the joints.[5]  For example, a plank or a wall sit would be considered isometric exercises.  Lunges

strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96–8p, 1996 WL 374184, at *5.

[4]     The State Agency physicians who reviewed Plaintiff's medical records opined that Plaintiff was capable of performing light work, but they did not have the benefit of Dr. Folkerth's opinion regarding Plaintiff's limitations on isometric activities.  (*See* AR 68–80, 82–94.)

[5]     *Compare Isometric exercises* ("Exercise against a fixed resistance, i.e., the muscles become tense but do not shorten.") *with Isotonic contractions* ("Exercises where the tension remains the same while the joint moves (the muscles lengthen and shorten), e.g., in swimming or riding an exercise bicycle."), Glossary of terms, 1 Medical Information System For Lawyers § 6:202 (2d).

and push-ups, as well as walking and riding a bicycle, on the other hand, would be considered isotonic exercises.

Here, the ALJ concluded that Plaintiff was capable of light work, which includes lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  (AR 24 (citing 20 C.F.R. § 404.1567(b).)  These lifting and carrying limitations reflect the opinions of the State Agency physicians and have support in the record.[6] However, the definition of light work does not specifically address the distinction between isometric and isotonic activities.  And the ALJ neither included a further restriction of no isometric exercise nor reconciled this limitation with the demands of the full range of light work, despite having given great weight to Dr. Folkerth's opinion.  Therefore, the ALJ erred.  *See Valentine*, 574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

The Court further finds that this error was not harmless.  The hypothetical an ALJ poses to a VE, which derives from the RFC, "must set out *all* the limitations and restrictions of the particular claimant."  *Id.* (quoting *Embrey*, 849 F.2d at 422).  Here, the hypotheticals given to the VE, derived from the RFC, did not include Plaintiff's limitations on isometric activities.  Additionally, although the VE testified that there would be jobs in the national economy even if Plaintiff was limited to sedentary work, as the ALJ recognized during the hearing, the application of the Medical Vocational Guidelines, or "the grids," may direct a finding of disabled.

Medical-Vocational Rule 201.14 directs a finding of disability where the claimant is limited to sedentary work, is an individual closely approaching advanced age, has at least a high school education, has previous skilled or semiskilled job experience but no

---

[6]     Plaintiff testified to being able to lift a gallon of milk (or 8 to 10 pounds) and her treating cardiologist, Dr. Stephan, stated in October 2016 that Plaintiff should not lift more than 20 pounds.  (AR 57, 689–90.)

10

transferrable skills, and no basis for direct entry into skilled sedentary work.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14.  Here, the ALJ determined that Plaintiff was an individual closely approaching advanced age, had at least a high school education, and previously performed semiskilled work.  (AR 27.)  Based on the foregoing, Rule 201.14 would apply if she had no transferrable job skills.  The ALJ did not determine whether Plaintiff had transferrable job skills, however, deeming the issue immaterial for purposes of his decision.  (AR 27.)[8]  Accordingly, the Court cannot find that the ALJ's error was inconsequential to the outcome and therefore harmless.  *See Boykin v. Berryhill*, No. 1:16-CV-00853-GSA, 2017 WL 1739831, at *4 (E.D. Cal. May 4, 2017) (remanding because the ALJ erroneously applied the light grids instead of the sedentary grids and never reached the issue of transferability of skills).

## B.   Mental RFC

Next, Plaintiff argues that the ALJ erred in failing to address Plaintiff's mental impairments in formulating his RFC.  (ECF No. 13-1 at 16–17.)  To determine whether a claimant has a severe mental impairment at step two of the Commissioner's sequential evaluation process, an ALJ must follow a "special technique."  *See* 20 C.F.R. § 404.1520a(a).  This entails the following steps: determining whether the claimant has any

---

[7]   *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g) ("Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.  However, recently completed education which provides for direct entry into sedentary work will preclude such a finding.  For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.").

[8]   Although the ALJ stated in his decision that he was not determining whether Plaintiff had transferable job skills as the issue was immaterial to his decision, the Court notes that the ALJ did inquire of the VE at the hearing whether Plaintiff had transferable skills, and the VE responded that Plaintiff had no transferable skills.  (AR 64.)

19-cv-00956-JLB

medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then, if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process. *See id.* § 404.1520a(b)–(d).

The four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See id.* § 404.1520a(c)(3). In rating the degree of limitation in these areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See id.* § 404.1520a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimaint's] ability to do basic work activities." *See id.* § 404.1520a(d)(1).

Here, the ALJ's decision reflects that he followed the "special technique" at step two. He acknowledged that Plaintiff had the medically determinable mental impairments of anxiety and depression. (AR 23.) He then proceeded to find that (a) Plaintiff had no limitation in the first, second, and third broad functional areas (*i.e.*, understanding, remembering or applying information; interacting with others; and concentrating, persisting, or maintaining pace), and (b) Plaintiff had only a mild degree of limitation in the other broad functional area (*i.e.*, adapting or managing oneself). (AR 23–24.) Accordingly, the ALJ found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere." (AR 24.)

Plaintiff is not challenging the ALJ's non-severity finding. Rather, Plaintiff contends that the ALJ erred in failing to address Plaintiff's mental impairments in formulating his RFC. (ECF No. 13-1 at 16–17.) Plaintiff contends that the ALJ was required to weigh the evidence and follow the special technique in formulating Plaintiff's RFC, and he failed to do so. (ECF No. 16 at 8–9.)

///

1    In assessing a claimant's RFC, an ALJ must consider the limiting effect of all

2   impairments, including those that are non-severe. *See* 20 C.F.R. § 404.1545(a)(2). "While

3   a 'not severe' impairment(s) standing alone may not significantly limit an individual's

4   ability to do basic work activities, it may—when considered with limitations or restrictions

5   due to other impairments—be critical to the outcome of a claim." SSR 96–8p, 1996 WL

6   374184, at *5.

7    The ALJ's step two assessment of the four broad areas of mental functioning, known

8   as the "paragraph B" criteria, is not an RFC assessment. *See id.* at *4. Rather, in

9   formulating the mental RFC used at steps four and five of the sequential evaluation process,

10   the ALJ is required to perform "a more detailed assessment by itemizing various functions

11   contained in the broad categories found in paragraphs B and C of the adult mental disorders

12   listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review

13   Technique Form]." *Id.*

14    In *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), the ALJ determined at step

15   two that the claimant's post-traumatic stress disorder ("PTSD") caused mild limitations in

16   concentration, persistence or pace, but was non-severe. *Id.* at 850. The ALJ later explicitly

17   excluded consideration of the claimant's PTSD in making his determination of the

18   claimant's RFC because he found that the claimant lacked credibility. In holding that the

19   ALJ had erred, the Ninth Circuit reasoned: "[W]hile the ALJ was free to reject Hutton's

20   testimony as not credible, there was no reason for the ALJ to disregard his own finding that

21   Hutton's nonsevere PTSD caused some 'mild' limitations in the areas of concentration,

22   persistence, or pace." *Id.* at 851.

23    Numerous courts in this Circuit have followed *Hutton* and found reversible error

24   where the ALJ failed to include mild mental limitations found at step two in the assessment

25   of the claimant's RFC. *See, e.g.*, *Carlson v. Berryhill,* No. 18-CV-03107-LB, 2019 WL

26   1116241, at *17–18 (N.D. Cal. Mar. 10, 2019); *Barrera v. Berryhill*, No. CV 17-07096-

27   JEM, 2018 WL 4216693, at *4–5 (C.D. Cal. Sept. 5, 2018); *Gates v. Berryhill*, No. ED CV

28   16–00049 AFM, 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, No.

14-cv-05082-HSG, 2015 WL 9023486, at *8–9 (N.D. Cal. Dec. 16, 2015); *Kramer v. Astrue*, No. CV 12–5297–MLG, 2013 WL 256790, at *2–3 (C.D. Cal. Jan. 22, 2013).

Here, at step two, the ALJ found mild limitation in Plaintiff's ability to adapt or manage oneself.  (AR 24.)  This finding was based on Plaintiff's testimony that she is limited in cleaning and performing activities of daily living, and her husband's testimony in a functional report that she does not handle changes in routine or stress well.[9]  (AR 24.)  In addressing Plaintiff's RFC, the ALJ did not discuss or consider the mild limitation caused by Plaintiff's anxiety and depression.[10]  He did give the testimony of Plaintiff's husband no weight, finding his statements unpersuasive "of additional restrictions in the [RFC], as the clinical or diagnostic medical evidence does not support" his assertions.  (AR 26.)  However, as in *Hutton*, while the ALJ was free to reject Plaintiff's husband's testimony, there was no apparent reason for the ALJ to disregard his own finding that Plaintiff's nonsevere anxiety and depression caused some mild limitation in her ability to adapt or manage herself.  *See Hutton*, 491 F. App'x at 851.

Based on the foregoing, the Court finds that the ALJ erred in failing to properly consider Plaintiff's mild mental limitations in formulating the RFC.

///

///

---

[9]     Plaintiff's husband stated that she does not handle stress well, but she handles changes in routine "ok."  (AR 293.)

[10]     The Court finds the ALJ's boilerplate statement at step 2 that his subsequent RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" to be insufficient.  *See Uranna G. v. Saul*, No. 3:18-CV-02117-RNB, 2019 WL 5342537, at *4 (S.D. Cal. Oct. 21, 2019) (finding the exact same statement insufficient for purposes of the RFC analysis); *Smith*, 2015 WL 9023486, at *8–9 (same); *Carlson*, 2019 WL 1116241, at *17 (same); *cf. Curtis v. Comm'r of Soc. Sec.*, 584 F. App'x 390, 391 (9th Cir. 2014) ("Although the ALJ wrote that he considered '[a]ll impairments, severe and non-severe,' in determining Curtis' residual functional capacity (RFC), we are unable to determine on the record before us whether the ALJ adequately considered Curtis' mental health limitations.").

### C.  Testimony of Plaintiff and Spouse

Next, Plaintiff argues that the ALJ failed to properly consider her symptom testimony and the testimony of her husband.  (ECF No. 13-1 at 17–19.)  Plaintiff specifically points to her hearing testimony, where she claimed she could no longer work because she has issues with her aorta on both sides of her neck (*see id.* at 18 (citing AR 43)), and Plaintiff's husband testimony that Plaintiff needs a ten-minute rest after she walks about one-quarter mile (*id.*).  Plaintiff claims the ALJ's rejection of this symptom testimony "was 'improperly cherry-picked' out of context and thus not based on substantial evidence." (*Id.* at 19.)

### 1.  Legal Standard

Where, as here, there is no evidence of malingering and the ALJ concludes that Plaintiff has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and internal quotation marks omitted).  A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [the symptom]." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (citation and internal quotation marks omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) (citation and internal quotation marks omitted); *see also Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); SSR 96–7p, 1996 WL 374186 at *2 (July 2, 1996).  In weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)); *see also Molina*, 674 F.3d at 1114 ("Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."). Lay testimony is competent evidence and cannot be disregarded without comment. *Molina*, 674 F.3d at 1114 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)); *Stout*, 454 F.3d at 1053. To discount lay witness testimony, the ALJ must give reasons germane to each witness. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Molina*, 674 F.3d at 1114. An ALJ is not, however, required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

2. <u>Analysis</u>

a. *Plaintiff's Testimony*

At the hearing, Plaintiff testified "that she could no longer work because she has issues with her aorta on both sides of her neck." (AR 25; *see also* AR 45.) She testified that after surgery she "attempted to go back to work after 8 months of rest, however she experienced lightheadedness." (AR 25; *see also* AR 42–46.) She further testified that she went to the emergency room in 2018 for chest pain. (AR 25; *see also* AR 52–53.)

In evaluating Plaintiff's symptom testimony, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [her] statements concerning the[ir] intensity, persistence and limiting effects . . . [we]re not entirely consistent with the medical evidence and other evidence in the record." (AR 25.)  The ALJ reasoned that Plaintiff's failure to "specify any particular complaint related to" her aortic dissection after surgery (other than regular follow-up treatment and monitoring) and the fact her treatment was "essentially routine and conservative in nature" indicated that her symptoms and limitations were not as severe as alleged.  (AR 25–26.)  As set forth below, the Court finds that the ALJ provided specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's testimony about the severity of her symptoms.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Here, the ALJ fairly summarized Plaintiff's post-surgery treatment for her aortic dissection, which can reasonably be construed as conservative, as follows:

> The medical evidence indicates that the claimant attended annual CT scans in follow-up to the aortic dissection.  During these visits, the record does not show significant findings or changes ([AR 805]).  Moreover, the claimant reported that she was "doing well and no issues" ([AR 800]).  Several physical examinations in 2017 and 2018 were unremarkable ([AR 818, 866]).  An echocardiogram performed in November 2017 also reflected mild results.  The diagnostic imaging revealed mild left ventricular hypertrophy, mild aortic regurgitation, and mild elevated descending thoracic aortic velocity of 2.1 m/s with no obvious coarctation ([AR 872]).  The doctor noted that a stable extensive type A thoracic aortic dissection with no significant change since May 2016 ([AR 873]).  Several months later, the claimant presented to the emergency room with chest pressure ([AR 893]).  A CT scan revealed postsurgical changes involving ascending aorta, however, there was no evidence of pericardial effusion.  The claimant's heart size was within normal limits ([AR 911, 954–56]).  The treating doctor assessed intrascapular pain and ruled out dissection ([AR 901]).  The lack of more aggressive treatment or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as she alleged.  The claimant even indicated that her blood pressure was "fine" and that she walked regularly, covering 3.2 miles a day (*Id.* [*see also* AR 893]).

(AR 25–26.)

An ALJ may also consider an "unexplained or inadequately explained failure to seek treatment" in determining whether a claimant's testimony is credible.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1113 (a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints" (quoting SSR 96–7p)).  Here, although Plaintiff sought treatment, the ALJ permissibly considered the lack of complaints in Plaintiff's medical records regarding her aortic dissection in determining that her symptoms were not as ongoing and disabling as alleged.  The ALJ pointed out that Plaintiff's "medical notes reflect numerous occasions on which [she] did not specify any particular complaint" related to her aortic dissection after surgery.  (AR 25.)  The ALJ found the lack of complaints inconsistent with Plaintiff's "claim of ongoing, disabling symptoms since the alleged onset date."  (AR 25.)  Instead, the ALJ noted that Plaintiff sought treatment for other ailments during this time, including "for a dermatofibroma on her left shoulder, mild low back pain from moving boxes, and foot pain."  (AR 25 (citing AR 751, 757, 760).)

Plaintiff does not argue that the reasons identified by the ALJ are legally insufficient or unsupported by substantial evidence.  Rather, Plaintiff argues that the ALJ impermissibly picked through the record to support discrediting Plaintiff's testimony.  (ECF No. 13-1 at 18–19.)  There is nothing before the Court to suggest, however, that the ALJ improperly cherry-picked the record in discounting Plaintiff's symptom testimony, and Plaintiff does not identify which part of the record she believes the ALJ failed to consider.[11]

///

---

[11]     The only testimony cited by Plaintiff is her statement that her aorta is split and cannot be fixed, thus suggesting that she cannot work.  However, the Court notes that there are no medical opinions or notes from treating physicians indicating that Plaintiff cannot or should not work given her aortic dissection.

For the foregoing reasons, the Court finds that the ALJ's adverse credibility determination is free of legal error and supported by substantial evidence in the record.[12]

### b. *Spouse's Testimony*

The Court further finds that the ALJ gave germane reasons for rejecting the testimony of Plaintiff's spouse. Plaintiff's husband testified that she needs to take a ten-minute rest after she walks about one-quarter mile. (ECF No. 13-1 at 19; *see also* AR 292.) The ALJ gave no weight to the statement of Plaintiff's husband. (AR 26.) The ALJ stated that the husband's assertions regarding Plaintiff's limitations "are not persuasive of additional restrictions in the [RFC], as the clinical or diagnostic medical evidence does not support his statement." (AR 26.)

Inconsistency with medical evidence is a germane reason to discredit the testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff does not identify any medical evidence supporting her husband's testimony regarding her need to rest after walking one-quarter mile, and the Court cannot identify any such evidence. Accordingly, the Court finds that the ALJ's rejection of this testimony is also free of legal error and supported by substantial evidence in the record.

### D.   Appointments Clause

Lastly, Plaintiff argues that the ALJ who oversaw her hearing was "unconstitutionally appointed" and argues her "application is required to be remanded for a new hearing with a different and constitutionally appointed ALJ." (ECF No. 13-1 at 19.) In support of her argument, Plaintiff relies on the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States," subject to the Appointments Clause of Article II of the United States Constitution. *Lucia*, 138 S. Ct. 2055; *see also* U.S. Const. art. II, § 2, cl. 2. *Lucia* also held that the appropriate remedy

---

[12]   The Court notes that in making this finding it does not affirm the ALJ's RFC determination. As discussed above, the ALJ erred in determining Plaintiff's RFC.

to a timely challenge "before the Commission" was a new hearing before a different ALJ that was properly appointed. *Id.* at 2055.

When *Lucia* was decided on June 21, 2018, Plaintiff's application was already pending before the ALJ, who had held the hearing but not yet issued a decision. Although *Lucia* did not involve the appointment of ALJs within the SSA, the Acting Commissioner of the SSA responded to the ruling by ratifying the appointments of ALJs and administrative appeals judges on her own to address any Appointments Clause concerns involving Social Security claims on July 16, 2018.[13]  Accordingly, Plaintiff now argues that because the ALJ was "unconstitutionally appointed" at the time he presided over her hearing in May 2018, the matter should be remanded for a "new hearing with a different and constitutionally appointed ALJ." (ECF No. 13-1 at 19.)  In response, Defendant argues that Plaintiff failed to make a timely challenge to the validity of the ALJ appointment because the issue was not raised before the ALJ and therefore, the issue has been waived. (ECF No. 14-1 at 24–30.)

As the Court has decided that the case must be remanded for a new hearing based on the merits, it need not decide whether an additional ground for remand is the Appointments Clause. *See Kirkendoll v. Saul*, No. 18-CV-07649-JSC, 2020 WL 435497, at *4–5 (N.D. Cal. Jan. 28, 2020).  If the Commissioner were to have the same ALJ conduct Plaintiff's hearing upon remand, Plaintiff would have the opportunity to argue that a new ALJ must hear the case at that time. *See Lucia*, 138 S. Ct. at 2055 (noting that that even if the original ALJ subsequently received a constitutional appointment, he could not hear the plaintiff's case upon remand because "[h]e cannot be expected to consider the matter as though he had not adjudicated it before").

///

///

---

[13]  *See* "Emergency Message EM-18003 REV 2", *available at* https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM.

**VI.   CONCLUSION**

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED**, the Commissioner's cross-motion for summary judgment is **DENIED**, and this matter is remanded for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated:  November 23, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-00956-JLB